IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RUTH A. GWIN, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No. 2:08-CV-0059-RDP |
| } | |
| **NATIONWIDE LIFE INSURANCE** } | |
| **COMPANY, et al.,** } | |
| } | |
| **Defendants.** } | |

### MEMORANDUM OPINION

The court has before it Plaintiffs' Motion to Remand (Doc. # 14), which was filed January 24, 2008. The motion has been fully briefed (Docs. # 15, 18, 19), and is now properly under submission for decision. Defendants removed this action on January 9, 2008 from the Circuit Court of Jefferson County, Alabama on the basis of preemption by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f). Plaintiffs seek to have their case remanded back to state court arguing that SLUSA does not preempt their claims. The parties agree that Plaintiffs' motion to remand presents this court with only two options: (1) "accept[] Plaintiffs' argument that SLUSA does not apply, [and pursuant to] both the general remand statute, 28 U.S.C. § 1447(c), and SLUSA's remand provision, 15 U.S.C. § 78bb(f)(3)(D) . . . 'remand the removed action back to the originating state court . . . ;'" *or* (2) find that SLUSA applies such that the motion to remand is due to be denied and "Plaintiffs' claims are [due to be] automatically dismissed." (Doc. # 13, at 2-3).

After careful review of the parties' arguments, and for the reasons outlined below, the court finds that Plaintiffs' claims are not preempted by SLUSA and that this case was improvidently

removed.  Thus, the court will grant Plaintiffs' motion and remand this case back to the Circuit Court of Jefferson County, Alabama.

**I.      Applicable Legal Standards**

SLUSA is part of a long line of federal securities statutes that originated seventy-five years ago with the passage of the Securities Act of 1933, U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*  In 1995, Congress became concerned with an increase in the number of frivolous securities class actions arising out of those federal securities laws, and it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA") "which set heightened pleading requirements for class actions alleging fraud in the sale of national securities, *see* 15 U.S.C. § 78u-4, and also provided for a mandatory stay of discovery to allow district courts, prior to discovery, to determine the legal sufficiency of claims brought in securities class actions, *see* 15 U.S.C. § 77z-1(b)."  *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1341 (11th Cir. 2002).  Although the PSLRA successfully reduced the number of securities class actions pending in federal courts, it also resulted in an unintentional increase in state court litigation when plaintiffs began "shifting their securities class actions from federal to state court, where the PSLRA did not restrict their claims." *Riley*, 292 F.3d at 1341.

"To close this loophole in the PSLRA, Congress passed SLUSA, making federal court the exclusive venue for class actions alleging fraud in the sale of 'covered securities.' Congress accomplished this by providing for removal of state actions to federal court, and requiring the immediate dismissal of 'covered lawsuits.'" *Riley*, 292 F.3d at 1341.  SLUSA provides, in pertinent part:

>    (1) Class action limitations

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) Removal of covered class actions
>
> Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f).  In order to remove an action to federal court under SLUSA, the removing party must show that: (1) the suit is a "covered class action;" (2) the plaintiffs' claims are based on state law; (3) one or more "covered securities" has been purchased or sold; and (4) the defendant is alleged to have misrepresented or omitted a material fact "in connection with the purchase or sale of such security." *Riley*, 292 F.3d at 1342.  The Supreme Court has clarified that SLUSA preempts not only class actions brought by purchasers or sellers of covered securities, but also actions brought on behalf of plaintiffs who merely were induced to *hold* covered securities.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85, 89 (2006).

**II.     Relevant Complaint Allegations**

Plaintiffs, who are participants in a deferred compensation plan established and maintained by the State of Alabama for state employees (the "Plan"), filed their class Complaint in this matter on November 20, 2007 in Alabama state court.  Plaintiffs' claims are brought against the following Defendants: (1) Alabama State Employees Association ("ASEA"), the Plan fiduciary that decides what entities provide Plan administrative services; (2) PEBCO, Inc. ("PEBCO"), a wholly owned

3

subsidiary of ASEA that performs some of ASEA's Plan fiduciary duties; and (3) Nationwide Life Insurance Company and Nationwide Retirement Solutions, Inc. (collectively "Nationwide"), with whom ASEA contracted to be the exclusive service provider for the Plan. (Complaint ¶¶ 2-5, 8-16).

As an insurance company, Nationwide provides services to the Plan via the Annuity Contract, which offers investment options for Plan participants to choose. (Notice of Removal ¶ 5). Some of the investment options are mutual funds that are also covered securities under SLUSA. (Complaint ¶ 18). The alleged misconduct in this case began with the negotiations between Nationwide and ASEA prior to the execution of the Annuity Contract which designated Nationwide as the Plan's exclusive service provider. Plaintiffs allege that during the time when ASEA was purportedly acting on behalf of Plan participants in negotiating the Annuity Contract terms with Nationwide (including "Contract Expenses" that compensate Nationwide for its services[1]), Nationwide paid ASEA and/or PEBCO at least $3,260,000 in commissions or endorsement fees. (Complaint ¶¶ 20-22).[2] The implication is that payments from Nationwide to ASEA and/or PEBCO were made in return for Nationwide becoming the exclusive annuity provider for the Plan and to ensure a favorable negotiation of the amount of "Contract Expenses" to be paid to Nationwide.

---

[1] "Contract Expenses" compensate Nationwide for its administrative services under the Annuity Contract. Those expenses are deducted from Plan participants' accounts and thus vary according to the amount of money invested by Plan participants. (Annuity Contract, at 8).

[2] Plaintiffs rely on the following facts as support for their allegation that Nationwide made payments to ASEA during the contract negotiations. In 2004, ASEA's federal tax filings reflect $950,000 described as "Nationwide Commission," which ASEA listed as unrelated business income under the business code of "[a]ll other insurance-related activities." (Doc. # 14, Ex. A, at 6; Complaint ¶ 20). In 2005 and 2006, ASEA's federal tax filings do not reflect a "Nationwide Commission," but instead show unrelated business income of $1,110,000 in 2005, and of $1,200,000 in 2006, that ASEA described as a "PEBCO Endorsement Fee" under the same business code of "[a]ll other insurance-related activities." (Complaint ¶ 21; Doc. # 14, Ex. B, at 8, Ex. C at 8).

Plaintiffs' Complaint generally alleges that Defendants violated three fiduciary duties[3]: (1) the duty to act solely in the interest of Plan participants and beneficiaries (referred to as either the "duty of loyalty" or the "duty to avoid self-dealing"); (2) the duty to maintain the Plan and its funds for the exclusive purpose of providing Plan benefits (referred to as the "exclusive benefit rule"); and (3) the duty to act with the care, skill, prudence and diligence that a prudent person would use in similar circumstances (referred to as the "prudent investor rule"). (Complaint ¶ 30). Plaintiffs further contend that ASEA failed to ensure that Plan funds were "handled properly," *e.g.*, such that they earned appropriate interest.

The Complaint synthesizes those allegations in three counts under Alabama state law: breach of fiduciary duties (Count One); conversion (Count Two); and breach of contract (Count Three). (Complaint ¶¶ 31-46). Specifically, Plaintiffs claim in Count One that Defendants breached fiduciary duties to the Plan when Nationwide allegedly paid ASEA millions of dollars during the time period when ASEA made Nationwide the Plan's exclusive service provider and when Plan funds were not used in a prudent manner so that the funds earned interest (or by not accounting for

---

[3] The parties' remand briefs make clear their dispute as to whether Nationwide actually served as a fiduciary to Plan participants. Plaintiffs contend that Nationwide was indeed a fiduciary, and they point to language from the Annuity Contract that the Plan was "for the exclusive benefit of its Participants and their beneficiaries." (Annuity Contract, at 2, 4; Complaint ¶ 28 (citing the IRS requirement that an annuity contract like the one in this case include the exclusive benefit rule)). Defendants point to other terms in the Annuity Contract that allegedly show Nationwide acted only as an independent company making certain insurance and investment options available to the Plan participants to choose on their own. (Annuity Contract, at 10). This dispute is not material to the court's analysis of subject matter jurisdiction. The question of whether Nationwide actually served as a fiduciary goes to heart of the merit of Plaintiffs' claims – an inquiry that is not relevant at this stage of the litigation. With respect to the matter of remand, the court is concerned only with what Plaintiffs have alleged, not what they eventually can prove. In that respect, there is no dispute that Plaintiffs have alleged that Nationwide breached a fiduciary duty to Plaintiffs.

any interest that those funds earned). (Complaint ¶¶ 31-38). Count Two alleges that Defendants converted Plan funds when they committed those fiduciary breaches. (Complaint ¶ 39-42). Count Three alleges that those fiduciary breaches amount to a breach of contract because the contract documents expressly incorporate a fiduciary's duty to maintain a plan and its funds for the exclusive purpose of providing Plan benefits. (Complaint ¶¶ 43-46).

### III.   Substantive Discussion

In this case, there is no dispute that three of the four SLUSA removal requirements are met: Plaintiffs have brought a "covered class action" on behalf of participants in the Alabama employees deferred compensation plan; they have raised state law claims; and their case does involve "covered securities." The crux of the parties' dispute, therefore, concerns the fourth removal requirement, which itself has two parts: whether Plaintiffs have alleged a fraud, deception, misrepresentation, or omission and whether that alleged misconduct occurred "in connection with the purchase or sale of a security." *Riley*, 292 F.3d at 1342. The absence of either part of the fourth requirement is fatal to Defendants' removal. Because, as outlined below, the court finds that Plaintiffs' Complaint does not, either explicitly or implicitly, allege a fraud, deception, misrepresentation, or omission, the court need not reach the second part of that inquiry to determine whether the alleged misconduct occurred in connection with the purchase or sale of a security.[4]

There can be no doubt that *if* Plaintiffs have alleged in their Complaint a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security, it is subtle

---

[4] The court notes, however, that if it did reach the merits of that inquiry, it would be inclined to find under *Dabit* that Defendants' misconduct did not "coincide with a securities transaction" and thus did not occur "in connection with" the purchase or sale of a covered security. *Dabit*, 547 U.S. at 85.

at best. Their Complaint does not use descriptive buzz words like "disclosed," "undisclosed," or "secret" that would be clear indicators of SLUSA preemption. None of the three counts pled by Plaintiffs require, as an essential element of that claim, proof of a misrepresentation, omission or deceit. In other words, the court must dig beyond the surface of Plaintiffs' claims to resolve the matter of whether removal of this case pursuant to SLUSA was proper.

Relying on a number of decisions (some unpublished) from district courts in other circuits, Defendants urge this court to ignore the wording chosen by Plaintiffs in their Complaint and focus instead on the "implicit meaning," the true "substance," and the "essence" of their allegations. (Doc. # 18, at 12-14). While it is true that the court must look beyond "artful pleading" to discern the true nature of Plaintiffs' claims, the cases Defendants cite do not - as they suggest - stand for the proposition that *any complaint* alleging "improper relationships, payments, conflicts and incentives implicitly raise[s] claims of omissions that fall within the broad scope of SLUSA." (Doc. # 18, at 18). In other words, while it may be true that a claim for breach of fiduciary duty cannot be used to disguise a misrepresentation claim for the purpose of avoiding SLUSA preemption, it does not mean that all claims for breaches of fiduciary duty tied to a covered security *are* designed to disguise a misrepresentation claim.

Indeed, in each and every case cited by Defendants (none of which are binding on this court), the complaint at issue included allegations of misstated securities values, omitted material facts, biased research, or failures to disclose – all of which clearly implicate SLUSA. *See Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) (finding that complaint was "replete with allegations that [defendant] disseminated biased and materially misleading investment research"); *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002) (noting that complaint

alleged that defendants "'affirmatively mislead prospective customers … and fail to disclose the inappropriateness and unsuitability of such investments'"); *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1211-12 (C.D. Cal. 2006) (emphasizing that complaint alleged that defendants offered plaintiffs "biased advice to maintain their accounts with Defendant and their holdings in [certain mutual funds]"); *Beary v. Nationwide Life Ins. Co.*, No. 2:06-cv-967, 2007 WL 4643323, at *1, *3 (S.D. Ohio Sept. 17, 2007) (noting that complaint alleged that Nationwide "'implemented a scheme'" and that the financial incentives created by this scheme "were not disclosed"); *Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP, 2006 WL 3408043 at *4 (S.D. Fla. May 10, 2006) (holding that complaint was "replete with claims of misrepresentation," alleging that defendant "'failed to fully and adequately disclose [expenses],'" "'conceal[ed] … forced investments,'" and "'covered-up its self-dealing'"); *In re Mut. Funds Inv. Litig.*, 437 F. Supp. 2d 439, 440, 443 (D. Md. 2006) (finding that plaintiffs alleged that defendants "incorporat[ed] … stale mutual fund prices into the value of … variable annuity accounts," misrepresenting the value of securities sold); *Nekritz v. Canary Capital Partners*, LLC, No. Civ. 03-5081(DRD), 2004 WL 1462035, at *1, *3 (D.N.J. Jan. 12, 2004) (pointing out that plaintiffs alleged defendant breached the duty of candor and "class members were 'induced to purchase shares … as a result of promises by [defendant] to prevent market timing'"); *Beckett v. Mellon Investor Servs., LLC,* No. C06-5245, 2006 WL 3249189, at *4 (W.D. Wash. Nov. 8, 2006) (finding that although complaint did not explicitly refer to any fraudulent activity such as a misrepresentation or omission of material fact, allegations that defendant charged undisclosed "fees . . . that were not authorized by their contract ... implicitly allege[d] an omission in connection with a covered security").  Unlike those cases, the

Complaint here contains no such allegations; Plaintiffs do not allege that their investment decisions were affected by wrong information. (Complaint ¶¶ 1-53).

Moreover, a close examination of the actual allegations pled in Plaintiffs' Complaint reveals that Defendants' characterizations of those allegations are both inaccurate and overreaching. According to Defendants, when Plaintiffs say that "Nationwide [paid] ASEA millions of dollars while ASEA determined how much Nationwide could deduct [in contract expenses] from Plan participants' accounts" (Doc. # 15, at 17-18 (referring to Complaint ¶¶ 20-22, 24)), they *really* mean that "ASEA and/or Nationwide misrepresented that the negotiated contract expenses were reasonable compensation for Nationwide's services, and that Defendants omitted to disclose that these expenses were the result of some improper conflict of interest or 'payback' scheme between Nationwide and ASEA" (Doc. # 18, at 14). Likewise, according to Defendants' characterization, when Plaintiffs complain that Nationwide and ASEA and/or PEBCO were involved in an improper relationship that included conflicts of interest and self-dealing and that caused harm to the Plan and generated illicit profits to the so-called fiduciaries, (Complaint ¶¶ 17-21, 23, 25-29), they *really* have alleged that "[t]he nature of the relationship between Nationwide and ASEA or PEBCO was misrepresented, and improper interests and incentives were never disclosed to the Plan participants" (Doc. # 18, at 15). Finally, Defendants suggest that any allegation that Defendants' relationship was inconsistent with the Plan's written documents (Complaint ¶¶ 27, 30, 45), necessarily implies that Defendants failed to disclose in "either a trust document or an annuity contract" their endorsement fee arrangements (Doc. # 18, at 15-16).

These examples illustrate that Defendants' reading of the Complaint goes far beyond just a broad interpretation – Defendants have effectively rewritten the claims pled in this case. Either

explicitly or implicitly, misrepresentations and/or omissions are not tenets of Plaintiffs' allegations in this case as outlined in the Complaint. Plaintiffs' reply brief provides a clear illustration of the difference between what Defendants believe they allege and what they have actually alleged: "The mere existence of conflicts of interest, improper payments, and mismanagement of employer match funds are sufficient factual predicates for Plaintiffs' claims. Whether Defendants disclosed these relationships, payments, or mismanagement is not at issue . . . . Lying about, or hiding, Defendants' conflicts of interest, payments, and mismanagement would neither change their fiduciary duties nor alter the conduct Plaintiffs allege breached those duties (and constituted conversion and breach of contract)." (Doc. # 19, at 3-4).

This court cannot - and will not - read more into the Complaint that what is there in order to find preemption. Accordingly, because the court finds that Plaintiffs have not - either explicitly or implicitly - alleged that Defendants misrepresented or omitted a material fact in connection with the purchase or sale of such security, *Riley*, 292 F.3d at 1342, their claims do not fall within the scope of SLUSA preemption provisions.[5] Accordingly, remand is the only appropriate course of action.

---

[5] In that same vein, the court rejects Defendants' invitation to weigh in on the merits of Plaintiffs' claims by determining whether they must prove misrepresentation, omission, or deception in order to prevail on their claims. For example, Defendants maintain that Plaintiffs must either admit that they were deceived about alleged improper payments, conflicts, and self-dealing among the Defendants or run the risk of losing their breach of fiduciary duty claim to the defense of ratification because they continued to participate in the Plan with knowledge of such conduct. Such an in-depth focus on the merits of Plaintiffs' claims may be appropriate under a Rule 56 standard of review, but it is not helpful here. Whether Plaintiffs can succeed on the merits of their claims is not the test for SLUSA preemption. Indeed, the question before the court is not even whether Plaintiffs' allegation state a claim for relief. Fed.R.Civ.P. 12(b)(6). SLUSA preemption depends, instead, on an examination of the complaint for allegations of "an untrue statement or omission of a material fact [or deception] in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b)(1); 15 U.S.C. § 78bb(f)(1)(A).

### IV. Conclusion

For the reasons outlined above, the court finds that Plaintiffs' motion to remand is due to be granted because SLUSA does not preempt their claims in this case. By separate order, the court will remand this case to the Circuit Court of Jefferson County, Alabama.

**DONE** and **ORDERED** this ___15th___ day of April, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE